**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARC LEDERER, | ) No. CV 16-01004-AS |
|                Plaintiff, | ) |
|      v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
|              Defendant. | ) |

**I. PROCEEDINGS**

On February 12, 2016, Plaintiff Marc Lederer ("Plaintiff") filed a Complaint, seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No 1). On July 1, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 14), and the Certified Administrative Record ("AR"). (Docket Entry No. 15). The parties

1

have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11-12).  On September 19, 2016, the parties filed a Joint Stipulation ("Joint Stip."), setting forth their respective positions on Plaintiff's claims.  (Docket Entry No. 19).

For the reasons discussed below, the decision of the Administrative Law Judge is AFFIRMED.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, formerly employed as an office manager, asserts disability beginning May 15, 2010, based on alleged mental health impairments related to mood swings, getting along with others, and controlling his temper.  (AR 37, 207-12).  On May 7, 2014, the Administrative Law Judge ("ALJ"), John Wojciechowski, examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Frank Corso.  (AR 37-38).  On July 2, 2014, the ALJ denied Plaintiff benefits in a written decision.  (AR 26-43).

The ALJ applied the five-step sequential process in evaluating Plaintiff's case.  (AR 26-43).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date.  (AR 22).  At step two, the ALJ found that Plaintiff has the severe impairments of personality disorder, mood disorder, and impulse control disorder.  (AR 31).  At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR

33).   Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to perform a full range of work, but that he was "limited to simple repetitive tasks involving no contact with the public and no more than occasional contact with co-workers and supervisors." (AR 34).

In making this finding, the ALJ discussed Plaintiff's treatment history in great detail.   Plaintiff attended Kaiser Permanente for one psychological exam in 2007 and for various appointments related to his physical health.   (AR 285-692, 710-864).   The ALJ noted that during the "single visit to the psychiatric clinic" in 2007, Plaintiff had "a largely normal objective mental status examination, including a euthymic mood; a normal-range, appropriate and mood-congruent affect; coherent, relevant and logical thought processes; and no thought content abnormalities or perceptual disturbances." (AR 35).   Plaintiff noted some symptoms, such as impatience, sadness, and worry, but Plaintiff did not return for follow-up psychological treatment until April 2012.   (AR 35, 631).   The ALJ surmised that during visits related to Plaintiff's physical health, he had a "normal mood, affect, memory, and judgment." (AR 35, 588). Plaintiff stated that he was "anxious" about having prostitis in a July 2008 visit, but there were no further credible mental health complaints in the Kaiser records.   (AR 35).

---

[1]      A Residual Functional Capacity is what a claimant can still do despite existing exertional and non-exertional limitations. <u>See</u> 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ also discussed Plaintiff's 2012 psychiatric evaluation at S & L Medical Group.  (AR 35).  During this visit, Plaintiff complained of mental health issues, but the ALJ determined that these complaints were not credible.  (AR 35, 705).  Plaintiff stated that he was "not interested in treatment" and "simply [wanted] a mental health diagnosis so that he [could] file for permanent disability."  (Id.).  The attending psychiatrist, Dr. David Reynolds, assessed Plaintiff as vague, anxious, and somewhat argumentative; with poor impulse control and motivation, fair judgment, and limited insight.  (AR 700-01).  The ALJ noted that Plaintiff neither returned for his follow-up appointment with Dr. Reynolds, nor took the Gabapentin that was prescribed to treat Plaintiff's alleged obsessive compulsive disorder and anxiety.  (AR 36, 867).  Plaintiff also exhibited malingering qualities when he called Dr. Reynolds and requested a limited spectrum autism diagnosis, which Dr. Reynolds refused to provide.  (AR 35, 867).

The ALJ gave little weight to the opinion of the state-appointed examining psychiatrist, Dr. Ernest Bagner, and relied instead, on the opinions of non-examining psychiatric consultants, David Deaver, Ph.D. and Pamela Hawkins, Ph.D.  (AR 36-37, 91-94, 116-23).  Plaintiff underwent a consultative psychiatric examination before Dr. Bagner on April 2, 2013.  (AR 693).  At the examination, Plaintiff complained of mood swings, depression, nervousness, and low motivation.  (AR 695).  Plaintiff appeared to be well developed with good eye contact, alert, oriented to time, place, person and purpose, and had normal movements, but he was also tense, hostile,

4

irritable, tangential, and experiencing "paranoid delusions." (AR 694-96). Plaintiff was able to recall "3 out of 3 objects immediately and 3 out of 3 objects in 5 minutes," "what he had for breakfast," and "his date of birth;" logically answer questions regarding basic knowledge, perform "serial sevens," spell the word "music" forward and backward; and had normal insight and judgement. (AR 695).

Dr. Bagner diagnosed Plaintiff with a mood disorder NOS,[2] psychotic disorder NOS, personality disorder NOS, and problems related to his social environment, occupation, health, and economic well-being. (AR 695-96). Dr. Bagner gave Plaintiff a GAF score of 60,[3] (AR 695-96), and found Plaintiff to be markedly limited in the ability to respond to changes or work pressure in a routine work setting; moderately limited in complying with job rules such as safety and attendance; interacted appropriately with the public, co-workers and supervisors; followed detailed instructions; and mildly limited in his ability to follow simple, oral and written instruction. (Id.).

---

[2]   "NOS" is an abbreviation used by health professionals that stands for "not otherwise specified." http://www.psyweb.com/mdisord/MoodDis/mdnos.jsp.

[3]   A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR"), 34 (2000).

The ALJ gave "little probative weight" to Dr. Bagner's evaluation for the following reasons: (1) Dr. Bagner's "observations and findings are anomalous when viewed in the context of other medical evidence of record . . . "; (2) evaluation notes indicated normal behavior, thus demonstrating that his opinion was largely based on Plaintiff's subjective representations, which were not credible; and (3) because Dr. Bagner only "met the claimant briefly," he did not have "an opportunity to consider the longitudinal evidence in this case . . . " (AR 36-37).

Dr. Deaver, a non-examining psychiatrist, found Plaintiff markedly limited in interacting appropriately with the public, and moderately limited in the ability to ask questions, accept and carry out instructions, maintain socially appropriate behavior, hold attention and regular attendance, sustain an ordinary routine, and respond appropriately to criticism. (AR 92). Dr. Deaver found that Plaintiff was not significantly limited in his ability to remember locations and work-like procedures; remember short and simple instructions; and work in coordination with, or in proximity to, others without being distracted. (AR 92-93).

Dr. Hawkins determined that Plaintiff was only moderately limited in his ability to maintain social functioning, concentration, persistence, or pace, and mildly limited in Plaintiff's activities of daily living. (AR 119). Dr. Hawkins indicated that she had "adopted" Dr. Bagner's opinion. (AR 120). However, Dr. Hawkins found Plaintiff "not disabled" whereas Dr.

Bagner gave Plaintiff a "guarded" diagnosis. (AR 123, 696). (AR 93).

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms not entirely credible because Plaintiff had "not received treatment for the allegedly disabling symptoms," which suggested that his "symptoms have not been particularly troubling or at least not as serious as has been alleged." (AR 35).

At step four, the ALJ determined that Plaintiff was not able to perform his past relevant work. (AR 37). At step five, the ALJ found that Plaintiff was able to perform jobs consistent with his age, education, work experience, and RFC existing in significant numbers in the national economy. (AR 38-39). Relying on the testimony of the VE, who considered all of Plaintiff's limitations in providing his opinions, the ALJ found that Plaintiff could perform the requirements of representative light or medium unskilled occupations such as small products assembler I (Dictionary of Occupational Titles ("DOT") No. 706.84-022), housekeeping cleaner (DOT 323 678-014), and warehouse worker (DOT 922.687-058). (AR 38). As a result of these findings, the ALJ found that Plaintiff was not disabled. (AR 39).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 1). The request was denied on December 15, 2015. (AR 1-5). The ALJ's decision then became the final decision of the

Commissioner, allowing this Court to review the decision.   See 42
U.S.C. §§ 405(g), 1383(c).

### III. STANDARD OF REVIEW

This Court reviews the Administration's decision to determine
if it is free of legal error and supported by substantial evidence.
See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157,
1161 (9th Cir. 2012). "Substantial evidence" is more than a mere
scintilla, but less than a preponderance. Garrison v. Colvin, 759
F.3d 995, 1009 (9th Cir. 2014). To assess whether substantial
evidence supports a finding, "a court must consider the record as a
whole, weighing both evidence that supports and evidence that
detracts from the [Commissioner's] conclusion." Aukland v.
Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f
the evidence can reasonably support either affirming or reversing
the ALJ's conclusion, [a court] may not substitute [its] judgment
for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880,
882 (9th Cir. 2006).

### IV. PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ failed to provide clear and
convincing reasons to reject the opinion of consultative examiner,
Dr. Bagner, in assessing Plaintiff's residual functional capacity.
(Joint Stip. 4-8, 16-19).

**V. DISCUSSION**

**A.  The ALJ Properly Evaluated Dr. Bagner's Opinion**

Plaintiff contends that Dr. Bagner's opinion, which markedly limited Plaintiff "in the ability to respond to changes in the work setting and work pressures," and moderately limited in the ability "to interact with supervisors, co-workers, and the public . . . " is supported by the record.  (Joint Stip. 6-8).  Plaintiff maintains that the ALJ improperly (1) gave credence to benign cognitive tests in Dr. Bagner's examination notes; (2) ignored the opinion of psychology intern, Jacquline Raines-Kohler, M.S.; and (3) relied on Plaintiff's lack of treatment to discredit Dr. Banger's opinion. (Joint Stip. 6-7, 16-17).

The opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than that of a reviewing physician.  Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).  The Commissioner must also provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating or examining physician.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006); Annis v. Commissioner Social Sec. Admin., 598 Fed. Appx. 517, 519 (9th Cir. 2015).  When a treating or examining physician's opinion is contradicted by another doctor, the opinion may only be rejected if the ALJ provides specific and legitimate reasons that are supported by substantial evidence in the record.  Hill v.

<u>Astrue</u>, 698 F.3d 1153, 1160 (9th Cir. 2012); <u>Murphy v. Commissioner Social Sec. Admin.</u>, 423 Fed. Appx. 703, 705 (9th Cir. 2011) (ALJ should at minimum provide specific and legitimate reasons in the decision for either expressly or implicitly rejecting the opinions of an examining physician).

The Court reviews the ALJ's decision to determine whether specific and legitimate reasons supported by substantial evidence in the record were provided to reject the opinion of the consultative psychiatrist, Dr. Bagner, in favor of the contradicting opinions of non-examining psychiatric consultants Dr. Deaver and Dr. Hawkins. <u>Hill</u>, 698 F.3d at 1160.

Here, the ALJ set out a "detailed and thorough summary of the facts and conflicting clinical evidence" that align with the opinions of Dr. Deaver and Dr. Hawkins, (<u>see</u> AR 35-36). <u>Morgan v. Commissioner of Social Security</u>, 169 F.3d 595, 600, 602 (9th Cir. 1999) (clinical findings from the record that support a non-examining medical advisor's opinion constitute substantial evidence). The ALJ referenced Plaintiff's 2007 psychiatry clinic visit and subsequent visits at Kaiser Permanente, which showed minimal evidence of mental health complaints or treatment that would indicate severe mental health conditions and functional limitations. (<u>See</u> AR 285-692, 710-864). (<u>Id.</u>). During Plaintiff's only psychological exam at Kaiser, Plaintiff diagnosed himself as manic depressive, but the examinee did not make any diagnosis. (AR 285, 288). Plaintiff attended numerous appointments for a variety of

non-disabling, physical conditions from September 2007 to May 2013.[4] Plaintiff consistently attended these appointments, was punctual, "well appearing," and "in no acute distress." (AR 429, 435). Plaintiff's most irregular visit was when he received treatment for a "human bite to the hand." (AR 460). Similarly, Plaintiff received minimal treatment at S & L Medical Group where he refused to take prescribed medications and exhibited malingering qualities such as requesting a limited spectrum autism diagnosis from Dr. Reynolds. (AR 700-05, 865, 867). These findings support Dr. Deaver and Dr. Hawkins' opinions that Plaintiff is not disabled and has no severe limitations aside from moderate to marked limitations in social functioning. (AR 92-93, 120-121).

Moreover, the ALJ properly determined that Dr. Bagner's own evaluation notes contradict the functional limitations that he assigned to Plaintiff. During the examination with Dr. Bagner Plaintiff appeared "alert and fully oriented" with "good eye contact, normal speech and normal psychomotor activity," and successfully performed a series of cognitive tests. (AR 36, 694-95). Given these "normal findings," the ALJ properly concluded that Dr. Bagner's opinion "rested largely on the subjective report of symptoms and limitations provided by the [Plaintiff]," who was found not credible. (Id.). Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a treating physician's opinion

---

    [4]     Plaintiff attended regular appointments at Kaiser for ulcerative colitis, urine frequency, elbow pain, a rib contusion, migraines, knee pain, ear pain, a mole check, and conjunctivitis, but his doctors did not refer him to mental health treatment. (AR 297, 340, 346, 352, 364, 383, 416, 597, 651, 655, 721).

where it relies largely on a claimant's discredited self-reports, rather than on objective clinical evidence). While reasonable minds may disagree over whether a cognitive test is probative evidence of a severe mood or personality disorder, it is not the role of the court to substitute its judgment for that of the ALJ. See Robbins, 466 F.3d at 882 ("If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ.").

The ALJ also emphasized that Dr. Bagner "met the claimant briefly on only one occasion and did not have the perspective shared by the State Agency doctors who had an opportunity to consider the longitudinal evidence in this case . . . " (AR 37). Limited observation of a claimant is a good reason to give less weight to a physician's opinion, especially when considered among the other factors already discussed by the ALJ's decision. See Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996). Accordingly, the ALJ provided a legitimate and specific reason to give little weight to Dr. Bagner's opinion where Dr. Bagner did not have a longitudinal picture of Plaintiff's conditions.

To the extent that Plaintiff offers an April 2012 evaluation conducted by a psychology intern, Jacquline Raines-Kohler, M.S., to support Dr. Bagner's opinion, the ALJ properly declined to follow Ms. Raines-Kohler's findings. Physicians' assistants, nurse practitioners, and interns are defined as "other sources," and are therefore entitled to less deference than traditional medical

sources, such as doctors and psychiatrists. 20 C.F.R. § 404.1513(d); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ need only give germane reasons to discount such opinions. <u>See</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)).

Ms. Raines-Kohler was a psychology intern at the time of the April 2012 evaluation, and thus not a traditional medical source. (AR 703-04). The ALJ found that the April 2012 evaluation was not persuasive because it was based on Plaintiff's subjective complaints, which were not credible. (AR 35). Lack of objective medical evidence to support an opinion is a proper, germane reason to reject the opinion of a non-traditional medical source. <u>See, e.g.</u> <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir.1984). Accordingly, the ALJ properly rejected the findings in Ms. Raines-Kohler's report.

However, it was improper for the ALJ to consider Plaintiff's lack of treatment in finding that there was not objective evidence of record to support Dr. Bagner's opinion. <u>Regennitter v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1124 (6th Cir. 1989) ("[M]ental illness is notoriously underreported" and "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")). The Court finds any

such error to be harmless[5] since, as discussed above, the ALJ provided other specific and legitimate reasons for rejecting the opinion of Dr. Bagner. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)(ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ otherwise provided legally sufficient reasons to reject opinion).

## VI.   CONCLUSION

For the foregoing reasons, the decision of Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 19, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[5]      The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).